**Eugene FEELEY, individually, and as Assignee of Peekskill Muffler Corporation, Plaintiff,**

v.

**The WHITMAN CORPORATION, Midas International Corporation, Midas Realty Corporation, and Cosmic Enterprises, Inc., Defendants.**

**No. 90 Civ. 2815(JES).**

United States District Court,
S.D. New York.

Sept. 1, 1999.

Henry and Regan–Henry, White Plains, NY, John V. Henry, Susan Regan–Henry, of counsel, for plaintiff.

Shatzkin & Reiss, New York City, Karen Shatzkin, of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Eugene Feeley, individually and as assignee of the Peekskill Muffler Corporation ("PMC") (collectively "plaintiff") brings the instant action for damages against The Whitman Corporation, Midas International Corporation, Midas Realty Corporation, and Cosmic Enterprises, Inc. (collectively "Midas"), alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and claims for fraud and tortious interference with contract and prospective economic advantage under the common law of the State of New York. Pursuant to Rule 56, Fed.R.Civ.P., Midas moves for summary judgment dismissing the complaint. Plaintiff has brought a cross-motion for summary judgment or for default judgment pursuant to Rule 55(b)(2), Fed.R.Civ.P. In the alternative, plaintiff seeks further discovery under Rule 56(f), Fed.R.Civ.P. For the reasons set forth below, Midas's motion is granted and plaintiff's cross-motion is denied.

### BACKGROUND

PMC is a New York corporation that owns and operates Midas muffler franchises in seven locations throughout New York. *See* First Amended Complaint, dated December 9, 1994 ("Compl.") ¶ 6. The shareholders of PMC are Eugene and Lin-

da Feeley and Guy and Victoria Ballirano. *See id.* ¶ 7. PMC has assigned its claims against Midas to Feeley. *See id.* ¶ 10. Feeley is a citizen of New York. *See id.* ¶ 5.

Midas International Corporation is a wholly owned subsidiary of The Whitman Corporation and is responsible for issuing Midas franchises and providing Midas products and equipment to Midas franchisees. *See id.* ¶¶ 14–16. Midas International Corporation also sells and leases real estate to its franchisees. *See id.* ¶ 17. Its wholly owned subsidiary Midas Realty Corporation secures and develops real property for Midas franchises and also sells and leases property to those franchises. *See id.* ¶¶ 20, 22. Cosmic Enterprises, Inc., is a wholly owned subsidiary of The Whitman Corporation and Midas International Corporation. *See id.* ¶¶ 24–25. It owns and operates company-owned Midas Muffler Shops. *See id.* ¶ 26. All defendants are Delaware corporations. *See id.* ¶¶ 11, 13, 18, 23.

Between 1975 and 1986, PMC entered into a series of franchise agreements with Midas, pursuant to which PMC opened its seven Midas Muffler shops in New York. *See* Compl. ¶¶ 59–77. Plaintiff alleges that Midas fraudulently induced PMC to enter each of the seven franchise agreements. *See* Plaintiff's Statement Pursuant to Local Civil Rule 3(g) of the United States District Courts for the Southern and Eastern Districts of New York ("Pl.3(g) Stmt.") ¶ 2.

The first of these agreements was executed on February 6, 1975, and licensed PMC's Peekskill franchise. *See* Defendants' Statement Pursuant to Local Civil Rule 3(g) of the United States District Courts for the Southern and Eastern Districts of New York ("Def.3(g) Stmt.") ¶ 1. During the negotiations, Midas allegedly misrepresented to PMC that the franchise agreement gave PMC a specific and exclusive trade market area for its Peekskill franchise. *See* Pl. 3(g) Stmt. ¶ 2. Midas also presented to PMC a written initial entry and expansion market study describing the primary market and the secondary market for the Peekskill franchise, the closest existing Midas shop location and the location of other automobile muffler repair shops, and the projected market potential and first year's sales for the Peekskill franchise. *See* Compl. ¶ 163. Plaintiff alleges that the market study included false representations by Midas that PMC would receive a specific market area. *See id.* ¶ 166.

Each of the franchise agreements between Midas and PMC contained the following non-exclusivity clause:

> Non-exclusivity. The right, franchise, and license granted herein shall be non-exclusive. Midas shall at all times have the right to establish and operate itself, or to license any other party or parties to establish and operate, a Midas Muffler Shop or Shops at any other location or locations whatever.

Def.Ex. B, Trademark and Franchise Agreement ¶ 1.2. The agreements also included an integration clause which stipulates that the written trademark and franchise agreement, together with the written lease,

> constitute and contain the entire agreement and understanding of the parties with respect to the subject matter hereof and thereof. There are no representations, undertakings, agreements, terms or conditions not contained or referred to herein or in any such lease or sublease.

Def.Ex. B, Trademark and Franchise Agreement ¶ 9.9.

In alleged reliance on Midas's alleged oral and written misrepresentations, PMC executed the February 6, 1975, franchise agreement for the Peekskill, New York, Midas franchise shop. *See* Compl. ¶ 142. Plaintiff claims that Midas made comparable misrepresentations upon which PMC relied with respect to the Scarsdale franchise in 1982, the Bedford franchise in 1983, the Carmel and Tarrytown franchis-

es in 1985, and the Poughkeepsie and Wappingers Falls franchises in 1986. *See id.* ¶¶ 139–166.

Plaintiff further claims that PMC was compelled to open its Scarsdale, Bedford Hills, Carmel, and Tarrytown Midas franchises in order to protect and preserve the economic viability of its existing and potential franchises. *See* Compl. ¶¶ 146, 150, 154, 158. Under the terms of the franchise agreements, Midas had complete access to PMC's business records, and plaintiff alleges that Midas misused this information to determine the location of new franchise shops that would compete with the existing PMC franchise shops. *See* Affidavit of Eugene Feeley ("Feeley Aff"), dated May 30, 1996, ¶ 16. According to plaintiff, following the purchase of the Peekskill shop in 1975, Midas used PMC's business records to expand their overall market share by establishing new shops in the same area. *See id.* ¶¶ 17–20. The addition of each new shop would have negatively impacted PMC's existing and potential businesses by siphoning off customers from the existing PMC shops to the new, more conveniently located shops. *See id.* ¶¶ 17, 20. As a result, plaintiff claims that Midas's business strategy allowed them no choice but to purchase the new franchise shops or suffer grave economic harm.

PMC challenged Midas's business practices of opening new franchise shops within the markets for existing franchise shops, and plaintiff claims that these challenges led to a confrontational relationship with Midas. *See id.* ¶¶ 7, 8. In response to PMC's challenges, Midas allegedly threatened to locate franchises in certain towns in order to draw additional customers away from PMC's existing shops. *See id.* ¶ 8.

Plaintiff also claims that Midas interfered with their negotiations to purchase a Midas franchise shop in Danbury, Connecticut. On January 24, 1984, plaintiff and Danbury Exhaust Specialists, Inc. ("Danbury Exhaust"), signed a letter of intent for the sale of the Danbury franchise to PMC, and PMC made a $10,000 deposit. *See* Affidavit of Robert J. Wolfe ("Wolfe Aff."), dated January 11, 1988 ¶ 3. That letter of intent provided that the parties would sign a contract to sell Danbury Exhaust's assets to Peekskill Muffler for $615,000, provided that Danbury Exhaust obtained a revised lease for its shop including certain terms, that Midas approved the transaction, and that the parties completed the transaction by April 15, 1984. *See id.* None of these conditions were met, however.

Thereafter, PMC expressed to Danbury Exhaust its continuing interest in purchasing the franchise shop. *See* Wolfe Aff. ¶¶ 6, 8, 17–19. On August 7, 1984, PMC sent Danbury Exhaust a letter proposing amendments to their original contract. *See id.* ¶ 8. On January 24, 1985, Danbury Exhaust sent plaintiff a revised contract with a purchase price of $420,000, almost $200,000 less than the price initially negotiated. *See id.* ¶ 15. In the transmittal letter, Danbury Exhaust stated that if the contract was not signed and returned by February 1, 1985, the deal could not go forward. *See id.*

When the contract was not signed by that date, Danbury Exhaust officially terminated the negotiations with plaintiff and returned PMC's deposit. *See id.* ¶ 16. On February 12, 1985, Danbury Exhaust received a letter from plaintiff dated February 7, 1985, enclosing a contract signed by plaintiff. *See id.* ¶ 17. Danbury Exhaust never signed the contract. Nonetheless, plaintiff claims that Danbury Exhaust had assented to the terms of the contract, and therefore, wrongfully refused to sign the February 7, 1985, contract executed by plaintiff. *See* Compl. ¶¶ 263, 264. Danbury Exhaust commenced negotiations with other prospective purchasers, eventually selling the shop to another Midas franchisee. *See* Wolfe Aff. ¶ 20.

Plaintiff alleges that Midas wrongfully, intentionally, and maliciously induced and

persuaded Danbury Exhaust to repudiate its proposed contract with PMC. *See* Compl. ¶ 266. Specifically, plaintiff states that Midas encouraged other Midas franchisees to purchase the Danbury franchise and discouraged the owner of Danbury Exhaust from selling the franchise to PMC. *See* Pl. 3(g) Stmt. ¶ 2(d). On March 25, 1985, at a meeting in Chicago, PMC informed Midas that it intended to sue Midas for tortiously interfering with PMC's purchase of the Danbury franchise. *See* Feeley Aff. ¶ 27. At that same meeting, plaintiff alleges that Midas threatened to retaliate by saturating PMC's trade market with new Midas shops. *See id.*

Previously, in 1983 or 1984, Midas had announced that it would open a new shop in Carmel, New York. *See* Feeley Aff. ¶ 28. After determining that the Carmel franchise would have an adverse impact on PMC's existing Peekskill shop and the Danbury shop that PMC hoped to purchase, PMC decided to apply for the proposed Carmel, New York franchise. *See id.* Plaintiff claims that in July 1985, Midas warned PMC that its suit against Midas concerning the Danbury franchise would jeopardize PMC's further expansion in the Midas franchise program, as well as PMC's acquisition of the proposed Carmel franchise. *See id.* ¶ 30. On September 19, 1985, Midas informed PMC that it had been tentatively awarded the proposed Carmel franchise, conditioned upon PMC's release of all legal claims against Midas. *See id.* at 32. When PMC refused, Midas relented and transferred the Carmel franchise to PMC without requiring that PMC execute the release. *See* Compl. ¶¶ 203, 204. On December 27, 1985, PMC entered into a written contract with Midas to purchase the real estate for the Carmel franchise. *See id.* ¶ 206.

However, on April 28, 1986, Midas demanded that PMC agree to an amendment to the December 27, 1985, contract that increased the purchase price by approximately $94,786.91 and made PMC liable, under certain conditions, for at least $25,000 of the cost of an additional drainage system. *See id.* ¶ 212. PMC refused to execute the proposed amendment and subsequently filed suit against Midas in the New York State Supreme Court, Putnam County, to compel Midas to perform under the terms of the original contract. *See id.* ¶¶ 214, 215.[1] The Supreme Court ruled for plaintiffs and directed Midas to close under the terms of the original December 2, 1985, contract. *See* Decision and Order and Judgment, Supreme Court of the State of New York, Putnam County, dated December 8, 1993, at 32–36.

Plaintiff alleges that Midas retaliated against PMC for commencing the state court action by refusing to sell PMC additional franchises. According to plaintiff, contrary to its stated policy to award new franchises to the expandable dealer most affected by the proposed new location, *see* Feeley Aff. ¶ 41, Midas denied PMC's applications for franchises in two New York locations and four Connecticut locations. *See id.* ¶ 42.

In addition to limiting PMC's expansion and attacking PMC's customer base through the creation of new franchises, plaintiff also alleges that Midas tortiously interfered with the business relationship among the shareholders of PMC. *See* Feeley Aff. ¶ 38; Compl. ¶ 271. Plaintiff alleges that Midas intentionally created tension and mistrust between Guy and Victoria

---

1.  In their complaint, plaintiffs Feeley, Ballirano, and PMC asserted a breach of contract claim relating to an alleged contract for sale of the Carmel shop, and multiple claims of fraud relating to the location of the Carmel franchise shop, the plans for and dates of construction, and the price of the franchise shop and real estate. Plaintiffs also alleged that Midas was negligent in the selection, design, and construction of the Carmel shop site, as well as in the preparation and execution of the construction plans. Furthermore, plaintiffs claimed that Midas used wrongful means to harass and cause pecuniary injury to plaintiffs, to interfere with their contract to purchase Danbury Exhaust, and to interfere with the business relationship among PMC's shareholders.

Ballirano and Eugene and Linda Feeley, thereby destroying PMC and the threat PMC posed to Midas's corrupt business practices. *See* Compl. ¶ 277.

Plaintiff commenced the instant action on April 26, 1990. Midas initially moved to dismiss the original complaint on the grounds that plaintiff lacked standing to assert claims on behalf of PMC and that the action was brought in violation of a temporary restraining order issued by the New York State Supreme Court in related litigation between the parties. *See* Def. Notice of Motion, dated June 1, 1990. Thereafter, the temporary restraining order was dissolved, and PMC assigned its claims to plaintiff, rendering Midas's motion moot. *See* Affidavit of John V. Henry ("Henry Aff."), dated May 30, 1996, ¶ 1.

Midas then moved to dismiss the complaint for failure to state a claim or for summary judgment or, in the alternative, for a stay of the action pending resolution of the previously filed New York State court action, and for sanctions pursuant to Rule 11, Fed.R.Civ.P. *See* Def. Notice of Motion, dated May 28, 1991. Plaintiff cross-moved for Rule 11 sanctions. *See* Pl. Notice of Cross–Motion, dated July 1, 1991. By Order dated September 17, 1991, this Court granted Midas's motion to stay the action until the conclusion of the trial in the state court action and denied the parties' cross-motions in all other respects. *See* Order, dated September 17, 1991.

After final judgment issued in the state court action, this action was restored to the trial calendar, and Midas again moved to dismiss the complaint. *See* Def. Notice of Motion, dated June 14, 1994. On November 17, 1994, this Court issued an Order denying Midas's motion to dismiss the original complaint. *See* Order, dated November 8, 1994. Plaintiff then filed an amended complaint on December 8, 1994. In the amended complaint plaintiff alleged claims under RICO, a common law fraud claim, and claims of tortious interference with contract and with prospective economic advantage. *See* Compl. ¶¶ 233–78. Midas then moved to dismiss the amended complaint on the grounds that plaintiff's claims were time-barred, that plaintiff failed to plead his allegations of fraud with particularity under Rule 9(b), Fed.R.Civ. P., and that plaintiff failed to state a cause of action. *See* Def. Notice of Motion, dated February 6, 1995. By Order dated December 15, 1995, this Court denied Midas's motion to dismiss. *See* Order, dated December 15, 1995.

Following denial of Midas's third motion to dismiss, Midas brought the instant motion for summary judgment. *See* Def. Notice of Motion, dated March 28, 1996. The Court stayed all discovery pending decision of the motion, and plaintiff brought a cross-motion for summary judgment, for default judgment under Rule 55, Fed. R.Civ.P., or alternatively for additional discovery pursuant to Rule 56(f), Fed. R.Civ.P. *See* Pl. Notice of Cross–Motion, dated May 30, 1996.

In support of its motion for summary judgment, Midas first argues that plaintiff's fraud, RICO, and tortious interference claims are defeated by the parties' written contracts because the express language of these contracts clearly establishes Midas's right to create new franchise locations without regard to the market area of any existing Midas franchise. Similarly, Midas argues that plaintiff's tortious interference claims must fail because they rest upon Midas's exercise of its contractual rights. In addition, Midas argues that plaintiff's claim that it tortiously interfered with its acquisition of Danbury Exhaust must fail because there was no contract between plaintiff and Danbury Exhaust.

In support of his cross-motion, plaintiff first claims that he is entitled to a default judgment pursuant to Fed.R.Civ.P. 55(b)(2) or to summary judgment because Midas has failed to file an answer to plaintiff's amended complaint. Alternatively, plaintiff claims that he is entitled to the

opportunity for further discovery pursuant to Fed.R.Civ.P. 56(f).

### DISCUSSION

Summary judgment is appropriate where, as here, "there is no genuine issue as to any fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the movant carries the burden of demonstrating the absence of any genuine issue of material fact, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348. The non-moving party must enumerate "specific facts and circumstances supported by depositions, affidavits based on personal knowledge, and admissions" that create a rational inference in his favor and may not rely on conclusory allegations or denials. *General Elec. Co. v. New York State Dept. of Labor*, 936 F.2d 1448, 1452 (2d Cir.1991).

In considering defendants' motion for summary judgment, the Court views all facts and construes all rational inferences derived therefrom in the light most favorable to plaintiff. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, absent a showing of a genuine issue of material fact by plaintiff, it is appropriate for the Court to grant summary judgment, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Plaintiff's Motion for Default Judgment

▉ As an initial matter, the Court must address two procedural issues raised by plaintiff. First, plaintiff argues that he is entitled to a default judgment pursuant to Fed.R.Civ.P. 55(b)(2) because of Midas's failure to file an answer to his amended complaint within the time required by Fed. R.Civ.P. 12(a). Dispositions of motions for entries of defaults and default judgments are left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties. *See Shah v. New York State Dept. Civ. Serv.*, 168 F.3d 610, 615 (2d Cir.1999). In the exercise of this discretion, the district court must be mindful of the strong policy favoring resolution of cases on their merits; defaults are generally disfavored and reserved for rare occasions. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–6 (2d Cir.1993). The district court may consider a variety of factors including whether the defaulting party's failure to plead or otherwise defend was merely technical or resulted from bad faith, the possibility of prejudice to the plaintiff, the merits of the plaintiff's substantive claim, the sufficiency of the complaint, the sum at stake, whether the default was due to excusable neglect, and whether court would feel obliged to set aside default on defendant's motion. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1152 (2d Cir.1995) (*citing* 10 James W. Moore *et al. Moore's Federal Practice* ¶ 55.20[2][b] ); *Enron Oil Corp.*, 10 F.3d at 96; *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir.1998). Here, the time that elapsed between denial of the Midas's Rule 12(b)(6) motion to dismiss and motion for summary judgment was very brief. Indeed, Midas stated its intention to move for summary judgment on December 8, 1995, at oral argument on the motion to dismiss. On December 15, 1995, this Court denied the motion to dismiss, and thereafter, on April 1, 1996, in accordance with the Court's scheduling order, Midas filed its motion for summary judgment. Furthermore, the lack of an amended answer in this case resulted in no prejudice to plaintiff where Midas's Local Civil Rule 3(g) Statement clearly framed the issues and fully responded to plaintiff's allega-

tions in the amended complaint. Therefore, the Court denies plaintiff's motion for a default judgment.

### Plaintiff's Rule 56(f) Cross–Motion

■ Plaintiff also argues that Midas's motion for summary judgment is premature because the Court has afforded plaintiff insufficient opportunity to conduct discovery. Plaintiff's argument is governed by Rule 56(f), Fed.R.Civ.P., which states in relevant part,

> [S]hould it appear from the affidavits of a party opposing [summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the adverse party's opposition, the Court may refuse an application for summary judgment or may order a continuance to permit ... discovery to be had.

Fed R.Civ.P. 56(f). In assessing the sufficiency of a Rule 56(f) affidavit, the Court considers the nature of the uncompleted discovery, whether the facts sought are reasonably expected to create a genuine issue of material fact, what efforts the affiant has made to obtain those facts, and why those efforts were unsuccessful. See *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985).

■ Although the Court has stayed discovery in this action, plaintiff's reliance upon Rule 56(f) is without merit, as the facts upon which Midas's summary judgment motion rests are clearly facts within the knowledge of plaintiff, requiring no discovery. As noted above and as set forth in greater detail hereafter, Midas's motion turns principally upon whether plaintiff relied upon Midas's alleged misrepresentations and whether Midas ever made extortionate threats to plaintiff or PMC. Clearly, plaintiff does not need discovery from Midas to prove that PMC relied upon Midas's misrepresentations or that Midas threatened PMC. Furthermore,

assuming *arguendo* that plaintiff required discovery from Midas to demonstrate the existence of a triable issue of fact, plaintiff in fact enjoyed the opportunity for extensive discovery in the related litigation in state court. Therefore, because plaintiff offers no persuasive argument that he requires any discovery to oppose Midas's motion, the Court denies plaintiff's request for further discovery and proceeds with a resolution of Midas's motion on the merits.

### Plaintiff's Fraud Claim

■ Plaintiff claims that he was fraudulently induced to enter the seven trademark and franchise agreements with Midas through Midas's alleged misrepresentations that plaintiff would receive an exclusive, delineated trade market area for each franchise. *See* Feeley Aff. ¶ 14. Under New York law, a plaintiff seeking to recover damages for fraud must prove a material misrepresentation or omission of fact known to be false by defendant, made by defendant for the purpose of inducing plaintiff's reliance, and upon which plaintiff reasonably relied, causing him injury. *See Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996); *see also New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Rosario–Suarz v. Wormuth Bros. Foundry*, 233 A.D.2d 575, 578, 649 N.Y.S.2d 225 (3rd Dept. 1996).

■ In the instant case, plaintiff fails to establish justifiable reliance upon Midas's alleged misrepresentations. The parties' franchise agreements expressly preserved Midas's right to open additional muffler shops "at any location or locations whatever." Although plaintiff alleges that Midas represented to plaintiff that PMC would receive an exclusive market area for each franchise, the agreements at issue also expressly provided that there are "no representations not contained herein" and

that the contract "supersedes all prior written agreements." Def.Ex. B ¶ 2; Def. Ex. C ¶ 1.2. Under New York law, plaintiff could not have reasonably relied upon Midas's alleged misrepresentations where these misrepresentations clearly contradicted the express terms of the parties' written contracts and these contracts included integration clauses. *See Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir.1993) (applying New York law); *Citibank N.A. v. Plapinger*, 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320–21, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959).

Representative of the New York courts' application of this rule is the decision of the Appellate Division, Second Department, in *Manchester Equip. Co. v. Panasonic Industrial Co.*, 141 A.D.2d 616, 617–18, 529 N.Y.S.2d 532 (2d Dept.1988). In that case, a distributor brought an action against Panasonic for selling products directly to the distributor's customers. The distributor claimed that it had received oral assurances from Panasonic that it would not make any such direct sales. However, the parties' distributorship contract contained a non-exclusivity clause, similar to the one in this case, which stated that Panasonic reserved the unrestricted right to make direct sales of the products to anyone, anywhere. The contract also contained an integration clause stating that there were no "representations ... covenants, agreements or collateral understandings between the parties not expressly contained in the contract." *See Panasonic Industrial Co.*, 141 A.D.2d at 617, 529 N.Y.S.2d 532. In reversing the lower court's decision and granting Panasonic's motion to dismiss, the Appellate Division, Second Department, ruled that the distributor could not show reasonable reliance because its allegations of fraud were inconsistent with the express terms of the contract. *See id.*

Plaintiff seeks to distinguish the instant case by arguing that the integration and non-exclusivity clauses in the franchise contracts were not sufficiently specific to bar his fraud claims. First, plaintiff claims that the integration clauses contained in the contracts were of a general, boilerplate nature. Additionally, plaintiff argues that any disclaimer of reliance upon Midas's representations regarding exclusive market areas was merely implicit and thus did not foreclose plaintiff's reasonable reliance upon the representations. However, the Court finds plaintiff's arguments without merit. Even assuming the integration clause was general in nature, it did not stand alone and must be read in conjunction with the non-exclusivity clause. Indeed, while the integration clause states generally that the parties have made no representations not contained in the contract, the non-exclusivity clause clearly and unequivocally addresses the very subject of Midas's alleged misrepresentations. When these clauses are read together, it is clear that the plaintiff's reliance was not justified. Thus, the Court must grant Midas's motion for summary judgment dismissing plaintiff's fraud claim.

### Plaintiff's RICO Claims

Plaintiff also alleges RICO claims arising from Midas's alleged scheme to induce PMC through fraudulent misrepresentations to enter into the franchise agreements and then extort money from PMC by threatening to open new shops in PMC's market area. Specifically, plaintiff alleges multiple instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, multiple instances of extortion in violation of 18 U.S.C. §§ 2 and 1951, and interstate travel in aid of extortion in violation of 18 U.S.C. §§ 2 and 1952. *See* Compl. ¶ 238. Plaintiff's RICO claims must fail however, for plaintiff has failed to show any RICO predicate acts committed by Midas that caused PMC or plaintiff any injury.

To recover on a civil claim for damages under RICO, a plaintiff must show (1) a violation of 18 U.S.C. § 1962; (2) injury to plaintiff's business or property; and (3)

causation of the injury by the violation. *See Powers v. British Vita, P.L.C.*, 57 F.3d 176, 187 (2d Cir.1995); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 766 (2d Cir.1994); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 22 (2d Cir.1990). Plaintiff's extortion claims fail to satisfy the first element requiring a violation of section 1962, and plaintiff's fraud claims fail to satisfy the third element because the alleged fraud caused plaintiff no injury.

■ To establish a violation of section 1962, a plaintiff must satisfy seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce. *See* 18 U.S.C. § 1962(a)–(c) (1994); *see Moss v. Morgan Stanley*, 719 F.2d 5, 17 (2d Cir.1983). Plaintiff's extortion claims under RICO fail because they lack a requisite element needed for a violation of section 1962—that the defendant engaged in "racketeering activity."

■ "Racketeering activity" within the meaning of the statute is defined in section 1961(1). Although extortion is listed in section 1961(1)(a) and (b) as a valid predicate act of racketeering, plaintiff does not put forth evidence of duress sufficient to support a claim of extortion as a matter of law. Under federal law, extortion requires the obtaining of property from another, with his consent, induced either by wrongful use of actual or threatened force, violence or fear, or under color of official right. *See* 18 U.S.C. § 1951(a)(2). These same elements are required under New York law. *See People v. Dioguardi*, 8 N.Y.2d 260, 267, 203 N.Y.S.2d 870, 877, 168 N.E.2d 683, 688 (1960) (noting that the language used in 18 U.S.C. § 1951 was patterned after New York's statutory definition of the elements of extortion).

■ Such duress was not present here as Midas's alleged extortionate threats were merely the exercise by Midas of its right to create new franchises, a contractual right expressly conferred by the nonexclusivity clause of the franchise agreements between the parties. Threats to act in accordance with one's legal rights do not and cannot constitute duress. *See Kamerman v. Steinberg*, 891 F.2d 424, 432 (2d Cir.1989); *Teachers Insur. Annuity Assoc. v. Wometco Enter., Inc.*, 833 F.Supp. 344, 348 (S.D.N.Y.1993); *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 594 n. 4, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981). Therefore, plaintiff's RICO extortion claim must fail.

■ Plaintiff also asserts predicate acts of mail and wire fraud under RICO, alleging that the same activities on the part of Midas that form the basis for his common law fraud claim also amount to a violation of RICO,. 18 U.S.C. § 1962(a)(b)(c)(d). *See* Compl. ¶¶ 233–243. Midas argues that because plaintiff cannot show reasonable reliance upon Midas's alleged misrepresentations, he cannot establish RICO predicate acts of mail and wire fraud. This argument ignores the well-established rule that the common law requirement of justifiable reliance is not an element of wire or mail fraud under federal law. *See Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 1841, 144 L.Ed.2d 35 (1999). Therefore, since the applicable mail and wire fraud statutes do not require the element of justifiable reliance, plaintiff does sufficiently allege predicate acts of racketeering activity based solely on his allegations of misrepresentations by Midas and thus satisfies the first element of a claim under RICO.

■ Although justifiable reliance is not necessary to establish predicate acts of mail and wire fraud, plaintiff must nonetheless establish justifiable reliance to satisfy a different element of his RICO claim, that of injury to plaintiff's business or property. After a plaintiff shows that defendant has violated section 1962, he must

further show that the predicate act caused the injury for which plaintiff seeks recovery. *See Powers,* 57 F.3d at 188; *Metromedia Co. v. Fugazy,* 983 F.2d 350, 368 (2d Cir.1992). RICO provides that "any person injured in his business or property by reason of a RICO violation may bring a civil action to recover treble damages." 18 U.S.C. § 1964(c). Courts have interpreted the phrase "by reason of" to require that there be a causal connection between the prohibited conduct and the plaintiff's injury. *See Powers,* 57 F.3d at 188; *First. Nationwide Bank,* 27 F.3d at 766; *Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.,* 985 F.2d 102, 104 (2d Cir. 1993); *Fugazy,* 983 F.2d at 368. Where mail or wire fraud is the RICO predicate act, plaintiff must show justifiable reliance to establish causation. *See Fugazy,* 983 F.2d at 368.

Thus, plaintiff's fraud claims under RICO must fail, if not because plaintiff has failed to establish predicate acts, then because plaintiff as a matter of law cannot prove causation. As set forth above, plaintiff could have relied upon Midas's misrepresentations only by disregarding the express terms of the franchise contracts and thus as a matter of law could not have justifiably relied upon these misrepresentations. Therefore, Midas is entitled to summary judgment on plaintiff's RICO mail and wire fraud claims.

### Plaintiff's Claim for Tortious Interference with the Danbury Exhaust Transaction

Plaintiff further alleges that Midas tortiously interfered with PMC's attempted acquisition of Danbury Exhaust by persuading Danbury Exhaust not to sell to PMC and encouraging other Midas franchisees to make offers to purchase the Danbury Exhaust franchise. *See* Pl. 3(g) Stmt. ¶ 2(d); Compl. ¶ 266. New York law imposes liability for interfering with the prospective economic advantage of another only where defendant's interference is motivated solely by malice, where the defendant creates or continues an unlawful restraint of trade, or where the defendant employs wrongful means. *See Guard–Life Co. v. S. Parker Hardware Manuf. Co.,* 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980). Plaintiff suggests that based on the affidavits, there is adequate proof that Midas used wrongful means to interfere with PMC's prospective business relationship with Danbury Exhaust and that Midas's sole motive was to injure PMC.

Plaintiff does not set forth in detail the manner by which Midas allegedly interfered with plaintiff's acquisition of Danbury Exhaust, stating only that Midas sought to persuade Danbury Exhaust not to sell its franchise to plaintiff. There is no allegation in the complaint or any evidence in the record that suggests that Midas employed any wrongful means to so persuade Danbury Exhaust. The only wrongful means claimed by plaintiff are Midas's alleged misrepresentations and threats to plaintiff that formed the basis for plaintiff's fraud and RICO claims. However, as discussed above, Midas's alleged misrepresentations do not constitute fraud, nor were its alleged threats sufficient to constitute duress. Therefore, plaintiff's claim that Midas used unlawful or wrongful means to interfere with its prospective business relationship with Danbury Exhaust is without merit. Furthermore, even if Midas's means were wrongful, these alleged misrepresentations and threats were directed to plaintiff, not Danbury Exhaust. A claim for tortious interference with a prospective business relationship turns upon the pressure or influence exercised by defendant over the party with whom plaintiff sought to establish a business relationship. *See G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 768 (2d Cir.1995); *Piccoli v. Calvin Klein Jeanswear Co.,* 19 F.Supp.2d 157, 167 (S.D.N.Y.1998). A plaintiff cannot state a claim for tortious interference by claiming that the defendant wrongfully induced plaintiff to forego a business oppor-

tunity. *See id.* Plaintiff has presented no evidence that Midas ever employed any wrongful means to dissuade Danbury Exhaust from selling its franchise to PMC.

The Court also rejects plaintiff's claim that Midas was motivated solely by a desire to injure PMC. Assuming, *arguendo,* that Midas was motivated in part by such a desire, plaintiff in his own affidavit admits that one goal of Midas's alleged wrongful conduct was to "expand their overall market share." *See* Feeley Aff. ¶ 6. Plaintiff could not possibly prove at trial that Midas's sole motive was to injure plaintiff and that Midas was not motivated at least in part by a desire to enhance its market position and ultimately its profits. Because New York law requires plaintiff to show that defendant acted solely from a desire to injure plaintiff, the Court must grant summary judgment to Midas on this claim. *See Guard–Life Corp.,* 50 N.Y.2d at 191, 428 N.Y.S.2d 628, 406 N.E.2d 445.

### *Plaintiff's Claim for Tortious Interference with Plaintiffs' Relationship with PMC's Shareholders*

Plaintiff's final claim alleges that Midas tortiously interfered with plaintiff's business relationship with PMC's other shareholders, causing a rift between them. *See* Feeley Aff. ¶ 38. This claim again rests upon the same alleged misrepresentations and threats by Midas that formed the basis for plaintiff's fraud and RICO claims. As discussed above with respect to plaintiff's claim that Midas tortiously interfered with the Danbury Exhaust acquisition, Midas's alleged conduct was neither fraudulent nor extortionate and thus not wrongful. In addition, plaintiff offers no evidence that Midas intended by its conduct to damage plaintiff's relationship with the other PMC shareholders or that Midas was motivated solely by malice. Thus, Midas is clearly entitled to summary judgment dismissing plaintiff's claim.

### *CONCLUSION*

For the reasons set forth above, the Court grants Midas's motion for summary judgment dismissing this action and denies plaintiff's cross-motions for default judgment, for summary judgment, and for further discovery. The Clerk of the Court is directed to enter Judgment accordingly and to close this action.

It is **SO ORDERED.**