In re: MARINE ASBESTOS CASES Juanito Bravo; Tar Ahmed; Vincent Albarado; Abdul Ahmed; Robert Couvillon; Kelly Crace; Rolando Bundang; Goerge Calixto; Gerald Cloutier; James Botsas; Petronilo Amor; Bernard Baker; Mohamed Bazina; Jose Bautista; Ciarro Aparra; Maria Arroyo; Francis Austria; Jamie Austria; Sonny Austria; Mia Newkirk; Roger Jackson; Bret Hughes; Kristofor Lord; John Kem; Scott Melendy; Emmanuel Laureta; Jacqueline Ma-

cLaurin; Billie Jones; Freddie Hudson; Richard Hudson; Diane Lord; Domingo Laureta; Robert McCloskey; Daniel Mergillano; Ferdinand Manzon; Maximo Lugtu; Mary Littel; James McCulloch; Reynaldo Quito; Robert Powers; Roberto Quimpo; Terry Osborne; Cipriano Panganiban; Valarie Patterson; Benjamin Picar; Deirdre O'Neill; Wanchai Peterson; Jose Pedroza; Regina Poteat; Les Nagashima; Stephen Hicks; Robert Hall; James Wilson; Charles Wilson; James Wood; Richard Wheatley; Armando DeJesus; Roman Genetiano; Artemia Gandeza; Gualberto Salaria; Aldo Santiago; Ron Sagadraca; Richard Weltzin; Barry Fuller; James Thomas; Ruben Siclot; Daniel Fowers; Steven Cunningham; Armando DeBlois; John Dean; Jesus Gonzaga; Robert Fleming; Mark Gross; Gregorio David; Robert Webb; Noel Bocaya; Francisco Hormaechea; Michael Hall; Cresente Gumanas; Mel Sison; Razee Gedera; Roberto Flauta; Manuel Guanga; Thomas Diviny; David Horton; Isabelo Fernandez; Ronald Smith; Cara Stinson; Roberta Tachang; Reynaldo Trias; Mario Ramiro; James Shepard; Roy Rogers; Sherry Roedel; William Ribar; Victorino Ramos; Armando Ramos; Maria Soria; Arthur Marshall; Bruce Freitas; Benjamin Rogers; Matthew Kamaunu; Frank Marshall; Wendell Okimoto; David Boisey; Lee Hardman; Kevin Inase; Roy Aldanese; George Young; Laura Cila; Sharon Ann Geoffroy; Gregory Louis Evans; Samuel M. Cruz, Jr.; Anthony Thompson; Walter Guerreiro; Fred Cintorino; James Holland; Ragen Young; Silvestre Bongolan; Mark Cabasag; Roland Cabasag; Burt Allan Turro; Francisco Roy; Lothar Wick; Terry Armas; Philippe J. Bolduc; Maurino V. Altura; Trent Presser; Sharon N. Martinat; Joe Marusak; Marylynn Perry; Michael Alan McCulloch; John Morrell; Thaddeus J. Pisarek; Richard Morrison; Thomas John Murphy; John William Morris; Alberto G. Dela Alma; Walter S. Harris; Brett Zeches; Robert M. Williams; Jesus Perez Dalisay; Donald Kent Fays; Mahendra Singh; David Brian Earl; George Tidewell; Johnathan Vance; Domingo M. Sesante; Shelly Ann Forsman; Nolan Kaewa Aiu Robinson; Thomas H. Lester; John Kaukeano; Michael George Gilleland; Darren Thomas Williams; William James Crockett; Glen Roderick Dymally; Sanyboy S. Whiting; Hans Noe Chun; James Michael Fennessy; Eugenio M. Cabral, Jr.; William Genavese; Frederick A. Edralin; Kevin Joseph Murray; Bridget Lynne Oshita; Gregory Kai; Mario S. Saquisame; Marcos H. Arriola–Guity; Steven Roy Volkoff; Walter Peter Guerreiro, Jr.; James Nelson Dias; Abraham Sy Acosta; Walter Loring Woodward; Patrick Reed Lafferty; Bruce E. Holloway, Plaintiffs–Appellants,

v.

AMERICAN HAWAII CRUISES, INC.; Great Independence Ship Company; Great Hawaiian Properties Corporation; Great Hawaiian Cruise Line, Inc., dba American Hawaii Cruises, Defendants–Appellees.

Nos. 99–16183, 99–16200, 99–16204, 99–16206, 99–16210 to 99–16212, 99–16218 to 99–16222, 99–16248 to 99–16256, 99–16265 and 99–16269, 99–16272 to 99–16276, 99–16280 to 99–16285, 99–16288 to 99–16292, 99–16297 to 99–16299, 99–16303, 99–16304, 99–16306, 99–16307, 99–16349, 99–16350, 99–16352, 99–16353, 99–16355, 99–16357, 99–16360, 99–16361, 99–16363, 99–16369, 99–16386 to 99–16390, 99–16392, 99–16394, 99–16395, 99–16398 to 99–16400, 99–16402, 99–16404, 99–16406, 99–16415, 99–16416, 99–16420 to 99–16432, 99–16434, 99–16435, 99–16445 to 99–16447, 99–16449, 99–16450, 99–16454 to 99–16457, 99–16459 to 99–16465, 99–16474 to 99–16477, 99–16481 to 99–16483, 99–16485 to 99–16488, 99–16505 to 99–16515, 99–16517 to 99–16520, 99–16536, 99–16537, 99–16540, 99–16541, 99–16543 to 99–16546, 99–16548, 99–16549, 99–16551 to 99–16553, 99–16557, 99–16559, 99–16561 to 99–16564, 99–16566, 99–16569, 99–16570, 99–16572, 99–16574, 99–16577, 99–16593 to 99–16597, 99–16599 to 99–16603, 99–16618, 99–16620, 99–16621, 99–16623, 99–16624, 99–16627, 99–16628, 99–16637, 99–16639, 99–16640, 99–16641, 99–16648, 99–16650, and 99–16651 to 99–16657.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 2001

Filed Sept. 10, 2001

Jay Lawrence Friedheim, Honolulu, Hawaii, for the plaintiffs-appellants.

Nenad Krek, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Honolulu, Hawaii, for the defendants-appellees.

Before: SCHROEDER, Chief Judge, WALLACE, TALLMAN, Circuit Judges.

SCHROEDER, Chief Judge:

This is a consolidated appeal involving 174 separate but virtually identical civil actions which were filed in the district court by seamen who formerly worked aboard the *S.S. Independence,* the *S.S. Constitution,* or both ships. Each plaintiff claims to have been exposed to asbestos in the course of employment on board the vessels. None of these plaintiffs has been diagnosed with any asbestos-related medical condition. Plaintiffs seek recovery, in the form of medical monitoring, under the Jones Act and theories of unseaworthiness, maintenance and cure, as well as the intentional torts of assault and battery and intentional infliction of emotional distress. Plaintiffs also seek punitive damages.

The principal question that we address in this appeal is whether, as a matter of law, a seaman can recover the type of medical monitoring requested by plaintiffs under any of the three seamen's claims: the Jones Act, unseaworthiness, and maintenance and cure. Plaintiffs want a court-supervised medical monitoring program that would provide each plaintiff with a single baseline medical examination. Plaintiffs also seek damages and costs for defendants' continuing failure to provide this relief.

The relief sought by these plaintiffs differs from two other forms of relief that courts have awarded in toxic exposure cases to persons who have not yet developed any diagnosed medical condition attributable to the exposure. The plaintiffs do not seek a lump-sum payment of their expected future medical monitoring costs. *See Metro–North Commuter R.R. Co. v. Buckley,* 521 U.S. 424, 439–40, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997) (refusing to recognize a "full-blown, traditional tort law cause of action for lump-sum damages."). Nor do they seek damages in the form of the economic value of the harm that they expect to suffer in the future, discounted by the probability that the harm will never occur. *See In re Paoli R.R. Yard PCB*

*Litigation,* 916 F.2d 829, 850 (3d Cir.1990) (differentiating between a claim for increased risk and a claim for medical monitoring). We have recognized the availability of monitoring damages for plaintiffs who have not yet developed symptoms of disease in *Abuan v. Gen. Elec. Co.,* 3 F.3d 329, 334 (9th Cir.1993), provided such monitoring is shown to have a medically beneficial effect.

The district court granted summary judgment for the defendants on all claims. The district court adopted the magistrate judge's conclusion that the Jones Act does not permit recovery for medical monitoring for plaintiffs who have not yet developed symptoms of disease, and that even if it did, these plaintiffs had failed to present sufficient evidence to raise a triable issue of fact as to causation and damages. The district court also adopted the magistrate judge's recommendation to grant summary judgment on plaintiffs' claims of unseaworthiness, maintenance and cure, assault, battery, intentional infliction of emotional distress, and punitive damages. We affirm because plaintiffs have not shown they will benefit from a single baseline examination where no abnormalities are yet apparent.

## THE COMMON LAW AND MEDICAL MONITORING

■ The courts that have awarded medical monitoring costs have adopted, with minor variations, a common set of elements that a plaintiff must establish in order to recover. In general, a plaintiff must prove that:

1. Plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant.

2. As a proximate result of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.

3. That increased risk makes periodic diagnostic medical examinations reasonably necessary.

4. Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

*Paoli,* 916 F.2d at 852.

These four elements were first set forth by the Third Circuit in a suit brought by plaintiffs who had worked in or lived near a railyard that was contaminated with poly-chlorinated biphenyls, more commonly known as PCBs. *Id.* at 835. In outlining these elements, the Third Circuit explained that "the appropriate inquiry is not whether it is reasonably probable that plaintiffs will suffer harm in the future, but rather whether medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." *Id.* at 851.

We adopted the *Paoli* elements in *Abuan,* 3 F.3d at 334, in which the plaintiffs alleged that they had been exposed to PCBs and other toxic chemicals when an electrical transformer ruptured. Although we recognized the availability of medical monitoring for plaintiffs who established the *Paoli* criteria, we affirmed the district court's grant of summary judgment for the defendants in that case, because the plaintiffs had failed to create a genuine issue of material fact as to their increased risk of contracting disease, the second *Paoli* factor. *Id.* at 334–35. With this background, we now turn to the plaintiffs' specific theories of recovery.

## THE JONES ACT

■ The plaintiffs' first claim is for recovery under the Jones Act, 46 U.S.C.App. § 688 (2000), which grants seamen a claim for personal injury caused by

an employer's negligence.[1] The Jones Act incorporates the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 (2000). *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 770 (9th Cir.1981); *Kernan v. Am. Dredging Co.,* 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). We accord common law principles great weight in interpreting the scope of the Jones Act. *See Gottshall,* 512 U.S. at 544, 114 S.Ct. 2396.

■ Plaintiffs maintain that the Jones Act permits recovery for medical monitoring. This question was left unresolved in the similar FELA context by *Buckley,* 521 U.S. at 444, 117 S.Ct. 2113, which noted, "We need not, and do not, express any view here about the extent to which the FELA might, or might not, accommodate medical cost recovery rules more finely tailored than [a 'new, full-blown, tort law cause of action' giving rise to an award of lump-sum damages]." We affirm summary judgment for the defendants and do not reach the question either. This is because even if medical monitoring were available under the Jones Act to a seaman who satisfied the *Paoli* factors, the plaintiffs have failed to present sufficient evidence to raise a genuine issue of material fact as to the reasonableness and necessity of the type of medical monitoring that they seek.

■ In analyzing the evidence, we have viewed it in the light most favorable to the plaintiffs, as we must in reviewing a motion for summary judgment brought by defendants. *See Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1087 (9th Cir.2001). We assume, as the district court did, that the plaintiffs have raised a genuine issue of material fact as to their exposure to asbestos, the first *Paoli* factor. Although the plaintiffs have failed to quantify their increased risk of disease, we assume without deciding that they have raised a genuine issue of material fact with respect to the second *Paoli* factor.

Plaintiffs have failed to raise a genuine issue of material fact, however, as to whether any increased risk of disease makes medical monitoring reasonably necessary, or whether early detection would provide any clinical benefit. Accordingly, they have failed to satisfy the third and fourth *Paoli* factors.

The Utah Supreme Court has well described the reason for requiring that plaintiffs show the monitoring will provide sufficient benefits in order for the monitoring to be considered reasonably necessary. "[U]nless a treatment is available that would be more beneficial to the plaintiff if administered before the illness becomes obvious, then there is no cause of action because medical monitoring cannot fulfill its purpose. The plaintiff can await the onset of the illness to sue." *Hansen,* 858 P.2d at 980.

Here, the plaintiffs have not shown that a treatment exists for asbestos-related diseases, or that there is clinical value to administering any such treatment before the onset of symptoms of these diseases. Plaintiffs maintain that all they seek is a single baseline medical examination. Yet they have submitted no evidence that a single examination would yield any clinical benefit. In opposition to the motion for summary judgment, plaintiffs submitted the affidavit of Dr. Carl Phillip Hallenborg, a physician. Dr. Hallenborg de-

---

1. The statute provides, in relevant part:
   Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply;....
   46 U.S.C.App. § 688 (2000).

868

scribed the type of medical monitoring program that he would recommend for asbestos-exposed patients: "at a minimum, quality annual chest x-ray exams with follow-up care for abnormal chest x-ray findings." He did not explain how patients would benefit from the single, baseline examination that plaintiffs seek where no abnormality is yet apparent.

Because plaintiffs have failed to satisfy the *Paoli* factors, they have failed to establish a genuine issue of material fact as to the reasonableness and necessity of medical monitoring in this case. We therefore affirm the district court's grant of summary judgment for defendants on the Jones Act claim.

## OTHER THEORIES OF LIABILITY

■ Plaintiffs also seek to recover medical monitoring as relief for injuries caused by unseaworthiness. Such a claim arises from a breach by the shipowner of the absolute duty to furnish a seaworthy vessel; that is, a vessel that is reasonably fit for its intended use. *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549–50, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). In order to recover for an injury caused by an unseaworthy condition, a seaman must establish that: (1) the seaman's work was in the ship's service and that the warranty of seaworthiness therefore applies; (2) the seaman was injured by a piece of equipment not reasonably fit for its intended use; and (3) the piece of equipment was part of the ship's equipment or an appurtenant appliance. *Gebhard v. S.S. Hawaiian Legislator*, 425 F.2d 1303, 1310 (9th Cir. 1970). The seaman need not prove negligence in order to recover for unseaworthiness. 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5–9, at 214 (3d ed.2001).

■ We hold that the plaintiffs have failed to establish that they have suffered an injury that is cognizable under a theory of unseaworthiness. We have already held that if toxic exposure were to constitute an injury for which medical monitoring could be awarded under a Jones Act negligence claim, a plaintiff would have to establish the four *Paoli* criteria in order to recover that remedy. It would be anomalous to award the medical monitoring remedy on a lesser showing of injury under a theory of unseaworthiness, which imposes liability without fault. *Cf. Miles v. Apex Marine Corp.*, 498 U.S. 19, 32–33, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) (holding that there is no recovery for loss of society under a theory of unseaworthiness, since Congress limited recovery under the Jones Act to pecuniary loss). Accordingly, we affirm the district court's grant of summary judgment for the defendants on the unseaworthiness claim.

■ Plaintiffs next seek recovery under the doctrine of cure, which provides that the vessel and her owners must provide medical care for a seaman who becomes sick or is wounded in the service of the ship. *See Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 82 L.Ed. 993 (1938). Cure is available only to a seaman who is presently sick or injured. *See Stevens v. McGinnis, Inc.*, 82 F.3d 1353, 1357–58 (6th Cir.1996) ("A shipowner must pay maintenance and cure for any illness or injury which occurred, was aggravated, or *manifested itself* while the seaman was in the ship's service.") (citation omitted) (emphasis in original). Plaintiffs are not sick, and in the absence of evidence that satisfies the *Paoli* criteria, they are not injured. Accordingly, the district court was correct to grant summary judgment for defendants on the cure claim.

■ Plaintiffs fare no better by labeling their claims as "intentional torts,"

since relief of any kind is available to a seaman in an action against his employer only under the theories we have already discussed. *See* 1 Schoenbaum, §§ 6–8, 6–20 (a seaman's remedies against his employer for personal injury are limited to maintenance and cure, unseaworthiness, and the Jones Act).

Because plaintiffs have failed to raise a genuine issue of material fact as to their claims under the Jones Act and maritime law, we need not address the issue of punitive damages. Since plaintiffs have failed to set forth any cognizable claim against their employers, and plaintiffs do not urge any independent ground for finding the unidentified defendants liable, we need not decide whether the magistrate judge erred in dismissing plaintiffs' in rem claims and claims against unidentified defendants for failure to timely serve process in accordance with Federal Rule of Civil Procedure 4(m).

## DISCOVERY

Plaintiffs challenge the district court's denial of their requests for discovery and their motion pursuant to Federal Rule of Civil Procedure 56(f) for a stay of summary judgment proceedings pending discovery. All of the facts needed to raise a genuine issue of material fact as to the necessity and efficacy of medical monitoring were within the control of the plaintiffs. *See Feeley v. Whitman Corp.*, 65 F.Supp.2d 164, 172 (S.D.N.Y.1999). Accordingly, we hold that the district court did not abuse its discretion in denying plaintiffs' Rule 56(f) motion.

AFFIRMED.